## GENERAL RELEASE AND SETTLEMENT AGREEMENT

This General Release and Settlement Agreement ("Agreement") is entered into by Robert S. Smith ("Mr. Smith"), Plaintiff, and Q.E.D. Systems, Inc. ("QED"), Defendant (collectively, the "Parties").

WHEREAS, Mr. Smith filed a lawsuit against QED that is currently pending before the United States District Court for the Eastern District of Virginia Norfolk Division (the "Court"), Case No. 2:19-cv-00215-RBS-RJK ("the Lawsuit"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b);

WHEREAS, QED denies any and all allegations of wrongdoing and admits no liability in entering into this Agreement; and

WHEREAS, in lieu of litigating the Lawsuit, the Parties have agreed to amicably resolve this matter for the terms set forth below;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Parties, the Parties hereby agree as follows (it being expressly understood and agreed that the Recitals to this Agreement are incorporated herein as fully effective provisions of this Agreement):

1. **PAYMENT.**

(A)     In exchange for the execution of this Agreement, QED agrees to pay the total sum of Sixty-Three Thousand Two Hundred Dollars ($63,200.00) ("Settlement Amount") to Mr. Smith as consideration to resolve all possible claims, including the Lawsuit.  The payment will be broken down as follows:

> (1) The amount of Twenty-One Thousand Dollars ($21,000.00) will be designated as  liquidated damages, for which a Form 1099 will be issued to Mr. Smith, and the check will be made payable to Robert S. Smith;

> (2) The amount of Twenty-One Thousand Dollars ($21,000.00) will be designated as wages, for which a Form W-2 will be issued to Mr. Smith, and the check will be made payable to Robert S. Smith; and,

> (3) The amount of Twenty-One Thousand  Two Hundred Dollars ($21,200.00) will be designated as attorney's fees and costs, for which a Form 1099 will be issued to Christian L. Connell, P.C., and the check will be made payable to Christian L. Connell, P.C.

(B)     As a condition for receipt of the payments described in Paragraph 1(A), Mr. Smith agrees to execute this Agreement. Payment of the amounts agreed upon in subparagraphs (2) and (3) above will be dependent upon the execution and return of a Form W-9 and other processing forms as needed to effectuate the payments.

912787v.1

Exhibit 1

(C)     The checks will be delivered to counsel for Mr. Smith at the following address:

> **Christian L. Connell, P.C.**
> **555 East Main Street, Suite 1102**
> **Norfolk, Virginia 23510**

(D)     The payment described above in Paragraph 1(A) will be delivered within thirty (30) days of the Court's approval of this Agreement.

(E)     Mr. Smith expressly agrees and acknowledges that the aforesaid payment described in Paragraph 1(A) constitutes good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

2.     **DISMISSAL OF THE CASE.**     The Parties agree to file a Joint Motion for Approval of Settlement Agreement and, once that motion is approved by the Court, a Joint Motion to Dismiss the Case with Prejudice.

3.     **MUTUAL GENERAL RELEASE.**

(A)     In consideration for the amount agreed upon in Paragraph 1(A), Mr. Smith, on behalf of himself, his estate, heirs, executors, administrators, representatives, attorneys, successors and assigns (collectively "the Smith Parties"), hereby irrevocably and unconditionally releases and forever discharges QED and each and any of their direct and indirect subsidiaries and affiliates, and their respective current, former and future principals, equity holders, direct and indirect subsidiaries and/or affiliates, directors, executives, officers, supervisors, employees, agents, insurers, representatives, attorneys, predecessors, successors, assigns, agents, representatives, and the like, both individually and in their official capacities (collectively, "the Released Parties"), from any and all claims, complaints, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs incurred), actions, causes, grievances or liabilities of any kind or any nature whatsoever, contractual, tortious or otherwise, in law or in equity, whether actual or potential, known or unknown, suspected or unsuspected claims ("Claims"), that any Smith Party may now have or ever had against any Released Party as of the date of this Agreement, including without limitation, any common law claims of discrimination, retaliation, wrongful discharge, interference, breach of contract, and/or any other claims under Federal, State or Local Law or statute relating to or applicable to the terms and conditions of Smith's employment at QED [hereinafter collectively, "Released Matters"]. All such Claims are forever barred by this Agreement regardless of the forum or form in which such Claims might be brought. This discharge includes any proceeding and/or charge filed with the U.S. Department of Labor or Virginia Department of Labor & Industry, or any other administrative body.

(B)     In consideration for Mr. Smith's promises in this Agreement, the Released Parties hereby irrevocably and unconditionally release and forever discharge Mr. Smith from any and all Claims that the Released Parties may now have or ever had against Mr. Smith as of the date of this Agreement. All such Claims are forever barred by this Agreement regardless of the forum or form in which such Claims might be brought.

(C)     Nothing set forth in this Agreement, including, without limitation, this Paragraph, shall be construed to waive the right of any Party to enforce any provision of this Agreement.

4.     **NONDISCLOSURE.**  The Parties agree that the terms of this Agreement will not be disclosed to any party or person not involved with these negotiations, except as described immediately below.

(A)     The Parties may only disclose the terms of the Agreement as part of the Joint Motion to Approve Settlement Agreement filed in the Lawsuit.

(B)     Mr. Smith may only disclose the Settlement Amount to his spouse, tax advisors, attorneys, or financial advisors. Even though the terms of the Settlement Agreement will be available to the public by PACER, Mr. Smith expressly agrees that he shall not (i) disclose or state the terms of this Agreement to any individuals employed by QED or its affiliates; (ii) publicize or post the terms of the Agreement through mass media or other electronic means (i.e. via text, email, Facebook, Twitter, Snapchat, TikTok, blog, website, or other social media or media outlets); or (iii) issue any press releases or contact the media regarding the Lawsuit or terms of the Agreement.

(C)     QED may disclose the Settlement Amount to its tax advisors, attorneys, or financial advisors.

(D)     If any Party is asked about the status of this dispute, they may only reply that "the matter was resolved."

5.     **NON-ADMISSION.**  The Released Parties do not admit any wrongdoing by entering into this Agreement.  QED specifically denies any and all allegations of wrongdoing.

6.     **NONDISPARAGEMENT.**

(A)     The Parties agree that they will not communicate any disparaging written or oral statements about one another or any of its direct or indirect subsidiaries or affiliates or any of their respective owners, directors, officers, or employees with whom they interacted during Mr. Smith's employment to any third party, including, any member of the media, and current, former or prospective clients of QED or any of its direct or indirect subsidiaries or affiliates (including, without limitation, Existing Clients), except as required by law, compulsory process, or as permitted under the terms of this Agreement.

(B)     For purposes of this Agreement, the term "disparagement" means any verbal or written statement that is false, libelous, or slanderous (for example, and without limitation, false, libelous or slanderous statements that are intended to interfere with prospective employment, business, academic, and/or research relationships, opportunities, or grants, including student enrollment, funding, and staff/faculty recruitment).

7.     **NON-COOPERATION.**  Mr. Smith represents that as of the Effective Date of this Agreement, he has not prepared, executed and/or provided any statements as to the Released Matters in any other proceedings.  As it relates to the Released Matters, without the prior written consent of QED, neither Mr. Smith nor any person acting on behalf of or under the direction or control of Mr. Smith, shall provide any testimony, statements, declarations, knowledge,

documents, affidavits or other information to, or shall otherwise assist, any person adverse to the Released Parties, in connection with any legal proceeding or investigation, unless compelled to do so by subpoena or court order.  The provisions of this paragraph shall not preclude Mr. Smith from responding to an order of a court of competent jurisdiction or subpoena issued under the authority thereof, or in response to any inquiry or subpoena issued by a state or federal governmental agency; provided, however, that notice of receipt of such judicial order, inquiry or subpoena shall, within five (5) days of the receipt thereof, unless the response deadline is earlier in which case notice must be received at least three business (3) days prior to the response deadline, be communicated to counsel for QED telephonically, and confirmed immediately thereafter in writing so that QED may timely seek appropriate judicial relief as necessary.

8.     **NO OTHER PROCEEDINGS.**  Mr. Smith represents that, as of the Effective Date, he has not instituted any other proceedings against any of the Parties to this Agreement, and that he is not aware of any person or entity entitled to make or file any claim(s) on his behalf.  Mr. Smith represents that he has not authorized, and will not authorize, any person, group or entity to assert or file any claim arising from Mr. Smith's employment with QED.  Mr. Smith agrees that if he becomes aware that a claim against the Released Parties has been filed on his behalf, he will cooperate with all parties and take all necessary and reasonable steps to see that such claim is dismissed and will not voluntarily cooperate with any third party in the prosecution thereof.

9.     **NOT ELIGIBILE FOR RE-EMPLOYMENT OR REINSTATEMENT.**  Mr. Smith acknowledges and agrees that he is not eligible for re-hire or reinstatement at QED or any of its related entities in any capacity, and forever waives and relinquishes any right that he may have to re-employment or reinstatement.  Mr. Smith also agrees that he will not, at any time for the rest of his natural life, knowingly submit any applications, whether written or oral, to QED or any of its related entities regarding a position of employment of any kind. In the event that either Mr. Smith is offered or accepts employment in violation of this Paragraph, QED or any of its related entities may, in its sole and absolute discretion, immediately retract such offer or terminate such actual or potential relationship without any liability or obligation to Mr. Smith in any manner.

10.     **TAX LIABILITY.** Mr. Smith acknowledges and understands that he will be liable for all personal income taxes, but no employer taxes, if any, owed on the amounts to be paid to him as set forth in this Agreement.

11.     **VOLUNTARY EXECUTION AND COMPREHENSION OF TERMS.**   The Parties acknowledge that they have carefully read this Agreement and understand all of its terms, including the full and final release of claims set forth above.  The Parties further acknowledge that they have voluntarily entered into this Agreement; that they were represented by counsel during the negotiation of this Agreement; that they have not relied upon any representation or statement, written or oral, not set forth in this Agreement; that the only consideration for signing this Agreement is as set forth herein; and that the consideration received for executing this Agreement is good and sufficient consideration.

12.     **ENTIRE AGREEMENT AND SEVERABILITY.**  Each Party agrees that this Agreement may not be modified, altered or changed except by a written agreement signed by the Parties.  Each Party acknowledges that this Agreement constitutes the entire agreement between

the Parties and supersedes any and all prior written and oral agreements. If any provision of this Agreement is held to be invalid, the remaining provisions shall remain in full force and effect.

13.     **WAIVERS.**  No provision of this Agreement can be waived by any Party unless in writing and signed by a duly authorized representative of the Party.  Breach of any provision shall not be deemed to be a waiver of that provision or any other provision hereof.

14.     **NO ASSIGNMENT AND AUTHORITY.**  Each Party represents and warrants that it owns the claims released herein and that it has not sold, assigned, or otherwise transferred such claims, or any interest in them.  Each Party represents and warrants that it has full power and authority to enter into this Agreement and release all of the matters released pursuant to this Agreement without the consent or approval of any person or entity not heretofore obtained.

15.     **GOVERNING LAW AND VENUE.**  This Agreement, and all issues regarding its interpretation and the Parties' performance under it, shall be construed according to the laws of the Commonwealth of Virginia, irrespective of its choice of law rules.  The Parties agree that the venue for any claims arising under this Agreement will be the U.S. District Court of the Eastern District of Virginia Norfolk Division.  The U.S. District Court for the Eastern District of Virginia will maintain continuing jurisdiction over this matter to the extent necessary to enforce the terms of this Agreement.

16.     **EFFECTIVE DATE.**  The Effective Date of this Agreement shall be the date on which the last Party executes this Agreement.

17.     **ENFORCEMENT.** In the event of that a Party proves a breach of this Agreement in a court of competent jurisdiction, the prevailing Party shall be entitled to recover reasonable attorneys' fees incurred in connection therewith.

18.     **COUNTERPARTS.**  This Agreement may be executed in identical counterparts, each of which shall constitute an original and all of which shall constitute one and the same.

19.     **CONSTRUCTION.**  The terms of this Agreement are not to be construed against the Party preparing it.

20.     **BINDING EFFECT.**  This Agreement shall benefit and bind the parties hereto, including their respective successors, assigns, agents, attorneys and personal representatives.

Signatures below indicate voluntary assent and agreement to abide by the terms stated above.

912787v.1

By: _____          Date: _1/4/20_
     Robert S. Smith

By: _____          Date: _1/9/2020_
     Winfred O. Stant, Jr., CFO
     on behalf of Q.E.D. Systems, Inc.